UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| COY'S HONEY FARM, INC., | ) |
| Plaintiff, | ) MDL No. 1:18md2820 SNLJ |
| v. | ) Case No. 1:21cv89 SNLJ |
| BAYER CORP., et al., | ) |
| Defendants. | ) |

# MEMORANDUM and ORDER

Plaintiff Coy's Honey Farms, Inc., is a bee-keeping and honey-producing operation based near Jonesboro, Arkansas. Plaintiff alleges that dicamba-based herbicide products, including those produced by defendants Monsanto and BASF[1], moved off target dicamba-tolerant plants and damaged non-tolerant vegetation surrounding plaintiff's bee-keeping operation. The result, plaintiff alleges, was reduced honey production and loss of bees. Plaintiff filed this lawsuit in the Eastern District of Arkansas, and the matter was transferred to this Court's *In re Dicamba Herbicides Litigation Multidistrict Litigation*, No. 1:18md2820 (the "MDL"). The MDL has been comprised mainly of farmers alleging that their non-dicamba-tolerant soybean crops were damaged by dicamba moving off-target, but other crops have also been included, including peaches. *See Bader Farms, Inc. v. Monsanto Co.*, No. 1:16cv299 (E.D. Mo.).

---

[1] Named defendants are BASF Corporation, BASF SE, Bayer Corporation, Bayer U.S., LLC, and Bayer Cropscience Arkansas Inc. Monsanto was acquired by Bayer during the course of this MDL. The Court will refer to the defendants as BASF and Monsanto for clarity.

The defendants have moved to dismiss [Doc. 15] plaintiff's twelve-count amended complaint [MDL Doc. 590; "FAC"].

## Legal Standard

Defendants have moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content. . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

## Discussion

Plaintiff's complaint includes the following counts:  (1) violation of the Lanham Act; (2) breach of duty of manufacturer; (3) breach of duty of manufacturer to warn; (4) breach of duty of manufacturer to instruct; (5) breach of implied warranty of

merchantability; (6) nuisance; (7) trespass; (8) negligence; (9) strict liability – products liability; (10) strict liability – ultrahazardous or abnormally dangerous activity; (11) violation of the Arkansas Deceptive Trade Practices Act; and (12) punitive damages.  The defendants' joint motion relies on seven arguments for dismissal and in large part piggybacks on this Court's memorandum and order dismissing certain counts of the Master Crop Damage Complaint filed in the MDL.  *See In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711 (E.D. Mo. 2019) ("*Dicamba I*").  Each argument is discussed in turn below.

**I.      Count 1: Lanham Act**

Plaintiff's Lanham Act claim is that defendants made false public statements that caused farmers to purchase and use dicamba herbicides when defendants knew or should have known that the herbicide would move off-target and damage non-tolerant plants. The Lanham Act, 15 U.S.C. § 1125(a) states in its Civil Action section that

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which –
> ...
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Defendants seek dismissal of plaintiff's Lanham Act claim.

Defendants' argument for dismissal hinges on plaintiffs' standing to bring a Lanham Act claim.  This Court denied defendants' motion based on a similar argument

3

with respect to the Crop Damage Master Complaint. *Dicamba I*, 359 F. Supp. 3d at 721. Regardless, defendants persist in suggesting that, to have standing, plaintiff must claim that alleged misrepresentations caused consumers to purchase less of plaintiff's honey or caused plaintiff to suffer loss of goodwill.

To state a claim under the Lanham Act, plaintiff must plead: (1) an injury within the "zone-of-interest," that is, "to a commercial interest in sales or business reputation," (2) that was "proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134, 140 (2014). Although the parties in a Lanham Act case are frequently competitors, the Act contemplates other relationships as well. For example, *Lexmark* was a case between a printer toner cartridge supplier and the manufacturer of components necessary for remanufacture. *Lexmark*, 572 U.S. at 112. The component manufacturer claimed that the toner manufacturer violated the Lanham Act when it made statements asserting that the component manufacturer's business was illegal. The Supreme Court explicitly stated that "although diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising, it is not the only type of injury cognizable under § 1125(a)." *Id.* at 138. *Lexmark* held that a plaintiff must "allege an injury to a commercial interest in reputation or sales proximately caused by the defendant's misrepresentations." 572 U.S. at 140. That is, a Lanham plaintiff must be a commercial actor suffering commercial injuries instead of being a "consumer who is hoodwinked into purchasing a disappointing product." *Id.* at 132. *See also In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1222 (D. Kan. 2015) (denying standing-based motion to dismiss). As with the plaintiffs behind the

4

Crop Damage Master Complaint, plaintiff has adequately alleged a Lanham Act claim for the purposes of a motion to dismiss.  *See Dicamba I*, 359 F. Supp. 3d at 721.

## II. Count 5: Breach of Implied Warranty of Merchantability

Plaintiff concedes defendants' motion with respect to its count for breach of the implied warranty of merchantability.  Count 5 will be dismissed.

## III. Count 6: Nuisance

Plaintiff claims in Count 6 that defendant's dicamba herbicide product resulted in an actionable nuisance.  In Arkansas, "[n]uisance is defined as conduct by one landowner that unreasonably interferes with the use and enjoyment of the lands of another and includes conduct on property that disturbs the peaceful, quiet, and undisturbed use and enjoyment of nearby property." *Goforth v. Smith*, 991 S.W.2d 579, 587–88 (Ark. 1999); *see also Ga.-Pac. Corp. v. Carter*, 265 S.W.3d 107, 113 (Ark. 2007). That is, the condition alleged to be a nuisance must stem from defendant's use of its land or activities conducted on defendant's property.  *Miller v. Jasinski*, 705 S.W.2d 442, 444 (Ark. Ct. App. 1986).  Plaintiff alleges that "Defendants have created a nuisance to the Plaintiff by developing and selling Herbicides to farmers and other applicators of Herbicides that were and are prone to drift and volatilize when sprayed over-the-top of soybeans, cotton, corn and other crops . . . ." [FAC ¶ 80.]  However, plaintiff does not allege that defendants own land in Arkansas, much less that the alleged conduct impacting plaintiff occurred on land owned by defendants.  This is fatal to plaintiff's nuisance claim. S*ee Indep. Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 890 (E.D. Ark. 2008) ("Defendants do not own the land on which the alleged nuisance occurred. Because

5

defendants are not landowners, plaintiffs cannot succeed on their public nuisance claim."), *aff'd sub nom. Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009). Count 6 will be dismissed.

## V. Count 7: Trespass

Plaintiff claims that defendants committed trespass when dicamba drifted or volatilized and damaged vegetation on property on which plaintiff was legally entitled to keep and maintain its bees. Defendants move to dismiss this claim because plaintiff failed to allege the requisite intent. Indeed, trespass in Arkansas requires that there be intentional direct physical interference with the person or property of another. *See Patton v. TPI Petroleum, Inc.*, 356 F. Supp. 2d 921, 930 (E.D. Ark. 2005). Although plaintiff alleges defendant knew their products would move off-target, plaintiffs do not allege defendants new the off-target movement was directed at plaintiff's bee-keeping operation.

Plaintiff's trespass claim also fails because, as this Court already noted in its dismissal of the Crop Damage Master Complaint's trespass count, the product was not within the control of the defendants after defendants sold it:

> As with the other claims, plaintiffs allege that the third-party farmers—not defendants Monsanto or BASF—sprayed dicamba such that it moved off-target and onto plaintiffs' properties. Defendants thus contend that they cannot be held liable for trespass. To be sure, "courts do not impose trespass liability on sellers for injuries caused by their product after it has left the ownership and possession of the sellers." *City of Bloomington*, 891 F.2d at 615. This is because sellers no longer exert control over the product. *See id.*; *see also Town of Westport v. Monsanto Co.*, CIV.A. 14-12041-DJC, 2015 WL 1321466, at *4 (D. Mass. Mar. 24, 2015) ("Courts have dismissed claims of intentional trespass against manufacturers on the basis of a lack of control post-sale"). And notably, plaintiffs do not allege

6

that defendants and the third-party farmers were engaged in an agency relationship, joint venture, or conspiracy.

*Dicamba I*, 359 F. Supp. 3d at 727.  This Court will thus dismiss plaintiff's trespass claim.

**VI.     Count 10:  Strict Liability --- Ultrahazardous Activity**

Plaintiff's Count 10 is for strict liability – ultrahazardous activity. An activity is ultrahazardous if it (1) necessarily involves a risk of serious harm to the person or chattels of others that cannot be eliminated by the exercise of the utmost care; and (2) is not a matter of common usage. *Mangrum v. Pigue*, 198 S.W.3d 496, 499–500 (Ark. 2004); *Tri-B Advert. Co. v. Thomas*, 643 S.W.2d 547, 548 (Ark. 1982).  Here, plaintiff claims that the defendants' manufacture and sale of the dicamba products constitutes an abnormally dangerous or ultrahazardous activity.  The sale and use of dicamba herbicides are matters of common usage and cannot be an ultrahazardous activity as a matter of law. *See Mangram*, 359 Ark. at 383 (holding that spraying a widely-used pesticide was not an ultrahazardous activity). This Court addressed such a theory in its order on the motion to dismiss the Crop Damage Master Complaint, stating

> is disinclined to extend the ultrahazardous activity doctrine to a claim that the manufacture, marketing, and sale of a product can be an ultrahazardous activity, as opposed to the actual use of the product itself. Again, no case has so held. Perhaps it is enough to say that it would be presumptuous for this Court to impose such an extension on these several states' laws. In any event, plaintiffs' theory is untenable. Their theory, which they admit is unique, is that the defendants' dicamba products are so hazardous that they cannot be used safely "over the top" under any circumstances and that the fraudulent (or at least misleading) marketing of the dicamba products makes its use irresistible to the consumer. Their claim seems to be that it is an ultrahazardous activity to mislead others to engage in an ultrahazardous activity. This is essentially a repackaging of what is more properly

7

> pleaded—and what plaintiffs have indeed pleaded in the Lanham Act and other counts—as a claim for misrepresentation. And it is simply too much a stretch from the conventional notion of an ultrahazardous activity, which involves only the actual use of the product in question, without regard to any misconduct by defendants. After all, the rationale behind the doctrine is that an activity may carry a risk that "is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care... and despite any usefulness it may have for the community...." *Restatement (Second) of Torts* § 520, cmt. f

*Dicamba I*, 359 F. Supp. 3d at 726–27.   Count 10 will be dismissed.

### VII.   Count 11: Arkansas Deceptive Trade Practices Act

Plaintiff claims defendants violated the Arkansas Deceptive Trade Practices Act ("ADTPA") because they "engaged in unconscionable, false, and deceptive acts and practices in marketing, selling, and labeling" XtendiMax and Engenia. [FAC ¶ 106.] Defendants seek dismissal of the count because they say the conduct of which plaintiff complains falls within the ADTPA's safe harbor provision.  The ADTPA does not apply to "[a]ctions or transactions permitted under laws administered by...[a] regulatory body or officer acting under statutory authority of this state or the United States, unless a director of these divisions specifically requests the Attorney General to implement the powers of this chapter[.]" Ark. Code Ann. § 4-88-101(3) (emphasis added).

In interpreting the scope of this "safe harbor," the Arkansas Supreme Court has adopted the specific-conduct rule, which exempts from the ADTPA's scope any actions or transactions that "have been specifically permitted or authorized under laws administered by a state or federal regulatory body or officer." *Air Evac EMS, Inc. v. USAble Mut. Ins. Co.*, 533 S.W.3d 572, 575–76 (Ark. 2017).

8

XtendiMax and Engenia, along with their labels, registrations, and advertising, are regulated by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") and its implementing regulations under the Code of Federal Regulations ("CFR"). *See* 7 U.S.C. § 136 *et seq.*; 40 C.F.R. § 150, *et seq*. Defendants argue that they produced and sold their dicamba herbicides in compliance with FIFRA as overseen by the EPA and that, as a result, their conduct is exempted from the ADTPA.

Plaintiff responds that the Ninth Circuit's decision in *National Family Farm Coalition et al v. EPA*, 960 F.3d 1120, 1144 (9th Cir. 2020) ("*NFFC*") saves its ADTPA claim. In *NFFC*, the Ninth Circuit determined that the EPA had violated FIFRA in issuing a registration for the Dicamba Herbicides and vacated the registrations. Plaintiff asserts that this Court must apply that decision retroactively in cases involving the same issue, thus the 2018 herbicide registrations are invalid and cannot serve to exempt defendants from their ADTPA claim.

Defendants respond that the *NFFC* opinion should not apply retroactively because it is not a United States Supreme Court opinion and because it did not issue any new interpretation or rule of federal law. *See Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97 (1993); *Teague v. Lane*, 489 U.S. 288, 301 (1989). Further, defendants argue that even if it were relevant that federal permission or authorization is later withdrawn, that does not negate the application of the safe harbor provision. The safe-harbor provision exempts "actions or transactions" that "have been specifically permitted or authorized under laws administered by a state or federal regulatory body or officer." *Air Evac EMS, Inc.*, 533 S.W.3d at 575-76. Plaintiff cites no case that vitiates such safe harbor in the

9

event that the permission or authorization by an agency is found to have been improvidently granted.

In addition, plaintiff does not contest that its ADTPA claim was not pleaded with sufficient particularity as required by Federal Rule of Civil Procedure 9(b).  *See Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1084–85 (E.D. Ark. 2013) (dismissing ADTPA claim because plaintiff's "conclusory" allegations did "not satisfy Rule 9(b)'s pleading requirements"). Plaintiff offers only bare allegations in support of its ADTPA claim.  For example, plaintiff fails to plead facts to support a finding of fraudulent intent, nor does it identify what marketing materials contained the alleged false or misleading information.

For all of these reasons, Count 11 will be dismissed.

**VIII.   Statute of Limitations**

Finally, defendants argue that plaintiff's product liability claims (Counts 2-5, 8-9) are barred by Arkansas's three-year statute of limitations.  That statute reads, "All product liability actions shall be commenced within three (3) years after the date on which the death, injury, or damage complained of occurs." Ark. Code § 16-116-203. Product liability actions include "all actions brought for or on account of ... property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging, or labeling of any product." Ark. Code § 16-116-202(5).   The cause of action for products liability accrues when plaintiff first becomes aware of both the fact of injury and the probable causal connection between injury and the product's use, or, when plaintiff, by

exercise of reasonable diligence, should have discovered causal connection between product and injuries suffered.  *Robinson v. Mine Safety Appliances Co.*, 795 F.3d 879 (8th Cir. 2015); *Uhiren v. Bristol-Myers Squibb Co., Inc.*, 346 F.3d 824 (8th Cir. 2003).

Defendants argue that plaintiff's counts for breach of duty of manufacturer (Count 2); breach of duty of manufacturer to warn (Count 3); breach of duty of manufacturer to instruct (Count 4); negligence (Count 8); and strict liability – products liability (Count 9) are all product liability claims subject to the three-year statute of limitations and must be dismissed because they accrued more than three years before plaintiff filed its complaint on May 25, 2021. Defendants say plaintiff knew of its claimed injuries and the alleged connection to dicamba in 2017.

Plaintiff concedes that "damages for losses that occurred prior to [July and the end of August 2017] would be barred" by the statute of limitations.  [Doc. 22 at 20.]  But plaintiff suggests its claims are unscathed by the statute because plaintiff seeks damages beginning in 2018, not in 2017.  Plaintiff contends that it may bring suit for damages from 2018 onward because each application of the dicamba herbicide is a separate tort and is subject to its own statute of limitations.   Defendant insists that, in fact, plaintiff complains of continuing or consequential economic damages stemming from the initial damage alleged and that plaintiff's theory of liability is of one continuing tort.  For example, plaintiff states that every application of dicamba "contributed to" its alleged damage, which was first suffered in 2017, and plaintiff claims that the effects of dicamba "occur months or years after the application." [Doc. 22 at 20-21.]  Further, defendants argue, plaintiff does not identify any of the supposed specific applications that caused its

11

injuries, nor the dates or locations of any applications.  Plaintiff also does not separate its damages year-by-year.

Plaintiff relies on *Parker v. Turner*, 242 S.W.2d 148 (1951) and its statement that "separate torts give rise to separate causes of action," providing as an example that if "on two separate occasions the defendant beat the plaintiff, and the plaintiff brings an action for one of the batteries, the judgment….does not preclude the plaintiff from subsequently maintaining an action for the other battery." (Internal quotation omitted.) Plaintiff argues that it has been "'beaten' by reoccurring applications of the defendants' herbicide products for the past three years," and that the "damages, and claims therefor, for each year are the result of separate acts." [Doc. 22 at 21.]  Plaintiff insists that it is "only complaining of damages for 2018 and subsequent years," [*id*. at 22] but plaintiff does not appear to have separated out the effects of previous years and in fact says the damages are continuing.

Arkansas does not recognize the continuing-tort theory of tolling the statute of limitations.  For example, in a breach of interference with a contractual relationship action, the Arkansas Supreme Court stated that the cause of action accrued when the defendant's improper conduct induced plaintiff's former customers to begin doing business with defendant.  *Quality Optical of Jonesboro, Inc. v. Trusty Optical, L.L.C.*, 225 S.W.3d 369, 372 (2006).  Such inducement occurred for the first time in January 1999, and thus the statute began to run at that time—it did not begin anew with "each successive infraction."  *Id.*  The court stated that "this court does not recognize a 'continuing tort' theory" and that because "the defections from [plaintiff] which gave rise

12

to this cause of action occurred more than three years prior to August 2005, this action is barred by the statute of limitations." *Id.*

This Court is reluctant to find that the First Amended Complaint sufficiently sets out separate torts as written.  *See also, e.g.*, *Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 135-36 (8th Cir. 1992) (refusing arguments by plaintiff that the alleged injury was separable for limitations purposes); *Chalmers v. Toyota Motor Sales, USA, Inc.*, 935 S.W.2d 258, 264 (Ark. 1996) (noting the Arkansas Supreme Court has "specifically rejected the continuing-tort theory of tolling the statute of limitations").  This Court will grant defendants' motion to dismiss Counts 2, 3, 4, 8, and 9.  Out of an abundance of caution, this Court will also grant plaintiff leave to amend those five counts within 30 days.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [Doc. 15] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that plaintiff's Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 are DISMISSED.

**IT IS FINALLY ORDERED** that plaintiff is granted leave to amend the dismissed Counts 2, 3, 4, 8, and 9 within 30 days.

Dated this __20th__ day of January, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE