**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **COY'S HONEY FARM, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **MDL No. 1:18md2820 SNLJ** |
| | ) | |
| **v.** | ) | **Case No. 1:21cv89 SNLJ** |
| | ) | |
| **BAYER CORP., et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM and ORDER**

Plaintiff Coy's Honey Farms, Inc., is a bee-keeping and honey-producing

operation based near Jonesboro, Arkansas.  Plaintiff alleges that dicamba-based herbicide

products, including those produced by defendants Monsanto and BASF[1],  moved off

target dicamba-tolerant plants and damaged non-tolerant vegetation surrounding

plaintiff's bee-keeping operation.  The result, plaintiff alleges, was reduced honey

production and loss of bees.  Plaintiff filed this lawsuit in the Eastern District of

Arkansas, and the matter was transferred to this Court's *In re Dicamba Herbicides*

*Litigation Multidistrict Litigation*, No. 1:18md2820 (the "MDL").  The MDL has been

comprised mainly of farmers alleging that their non-dicamba-tolerant soybean crops were

damaged by dicamba moving off-target, but other crops have also been included,

including peaches.  *See Bader Farms, Inc. v. Monsanto Co.*, No. 1:16cv299 (E.D. Mo.).

---

[1] Named defendants are BASF Corporation, BASF SE, Bayer Corporation, Bayer
U.S., LLC, and Bayer Cropscience Arkansas Inc.  Monsanto was acquired by Bayer
during the course of this MDL.  The Court will refer to the defendants as BASF and
Monsanto for clarity.

Defendants moved to dismiss [Doc. 15] plaintiff's original twelve-count first amended complaint [MDL Doc. 590; "FAC"].  The first amended complaint included the following counts: (1) violation of the Lanham Act; (2) breach of duty of manufacturer; (3) breach of duty of manufacturer to warn; (4) breach of duty of manufacturer to instruct; (5) breach of implied warranty of merchantability; (6) nuisance; (7) trespass; (8) negligence; (9) strict liability – products liability; (10) strict liability – ultrahazardous or abnormally dangerous activity; (11) violation of the Arkansas Deceptive Trade Practices Act; and (12) punitive damages.  This Court dismissed Counts 2 through 11, but plaintiff was allowed leave to replead Counts 2, 3, 4, 8, and 9.

Plaintiff filed a second amended complaint ("SAC") [Doc. 31], and defendants have again moved to dismiss [Doc. 33].  The motion has been fully briefed.

## Legal Standard

Defendants have moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content. . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster.  *Iqbal*, 556 U.S. at 678.

## Discussion

Plaintiff's second amended complaint [Doc. 31] includes the following counts:  (1) violation of the Lanham Act; (2) breach of duty of manufacturer; (3) breach of duty of manufacturer to warn; (4) breach of duty of manufacturer to instruct; (5) trespass; (6) nuisance; (7)  negligence; (8) absolute liability for ultrahazardous or abnormally dangerous activity; (9) violation of the Arkansas Deceptive Trade Practices Act ("DTPA"); and (10) punitive damages.  In sum, plaintiff did not replead its counts for breach of implied warranty of merchantability (Count 5 in the First Amended Complaint ("FAC")) or strict liability – products liability (Count 9 in the FAC).

Defendants' motion to dismiss partly hinges on the fact that plaintiff was invited to replead only FAC Counts 2, 3, 4, 8, and 9.  Plaintiff did replead FAC Counts 2, 3, 4, and 8 as SAC Counts 2, 3, 4, and 7.  But plaintiff also repleaded its trespass, nuisance, absolute liability for ultrahazardous or abnormally dangerous activity, and violation of the DTPA counts.  Defendants contend that those four impermissibly repleaded counts should be dismissed and that the four permissibly repleaded counts are still fatally flawed and should be also dismissed.

I.      **Counts 5, 6, 8, and 9**

Plaintiff's Counts for trespass, nuisance, ultrahazardous or abnormally dangerous activity, and violation of the DTPA were dismissed from the FAC by this Court. Defendants argue that those counts were dismissed with prejudice or that, at the very least, plaintiff was required to seek leave before refiling those claims.

This Court held that each of claims alleged in Counts 5, 6, 8, and 9 were fatally flawed under Arkansas law.  For example, plaintiff did not plead that the condition alleged to be a nuisance had stemmed from defendant's use of or activities conducted on defendant's own property. [Doc. 28 at 5 (citing *Miller v. Jasinski*, 705 S.W.2d 442, 444 (Ark. Ct. App. 1986).]  Plaintiff does not dispute that that it was not granted leave to replead these claims, nor does plaintiff argue that its new pleading cures the deficiencies identified by the Court.  In fact, plaintiff does not refute defendants' dismissal arguments at all for Counts 5, 6, 8, and 9.  Counts 5, 6, 8, and 9 will be dismissed.

II.     **Counts 2, 3, 4, and 7**

Counts 2, 3, 4, and 7 are for (2) breach of duty of manufacturer; (3) breach of duty of manufacturer to warn; (4) breach of duty of manufacturer to instruct; and (7) negligence.  As discussed at length in this Court's Memorandum and Order on the motion to dismiss the FAC, these counts are each products liability claims subject to Arkansas's three-year statute of limitations, Ark. Code § 16-116-203.  [Doc. 27 at 9-13.]

In this Court's Memorandum and Order addressing the FAC, the Court stated

The cause of action for products liability accrues when plaintiff first becomes aware of both the fact of injury and the probable causal connection between injury and the product's use, or, when plaintiff, by

4

exercise of reasonable diligence, should have discovered causal connection between product and injuries suffered. *Robinson v. Mine Safety Appliances Co.*, 795 F.3d 879 (8th Cir. 2015); *Uhiren v. Bristol-Myers Squibb Co., Inc.*, 346 F.3d 824 (8th Cir. 2003).

[Doc. 27 at 10-11.]  Plaintiff conceded that "damages for losses that occurred prior to [July and the end of August 2017] would be barred" by the statute of limitations. [Doc. 22 at 20.]  But plaintiff suggests its claims are unscathed by the statute because plaintiff seeks damages beginning in 2018, not in 2017.  However, the plaintiff allegations suggested that its damages were continuing beginning in 2017 and that each season's application of dicamba further exacerbated the damages. Arkansas does not recognize the continuing-tort theory of tolling the statute of limitations, so the successive dicamba applications did not restart the statute of limitations clock.  *See Quality Optical of Jonesboro, Inc. v. Trusty Optical, L.L.C.*, 225 S.W.3d 369, 372 (Ark. 2006);  *Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 135-36 (8th Cir. 1992) (refusing arguments by plaintiff that the alleged injury was separable for limitations purposes); *Chalmers v. Toyota Motor Sales, USA, Inc.*, 935 S.W.2d 258, 264 (Ark. 1996) (noting the Arkansas Supreme Court has "specifically rejected the continuing-tort theory of tolling the statute of limitations"). Plaintiff also argued that each application of the dicamba herbicide is a separate tort and is subject to its own statute of limitations. This Court agreed with defendant that the FAC did not set out separate torts.  For example, plaintiff alleged that every application of dicamba "contributed to" its alleged damage, which was first suffered in 2017, and plaintiff claimed that the effects of dicamba "occur months or years after the application." [Doc. 22 at 20-21.]

Out of an abundance of caution, this Court invited plaintiff to replead the product liability claims, and plaintiff did so.  Defendants again argue that the claims fail to state a claim within the statute of limitations.

Plaintiff has reframed its claim, alleging that because applications of dicamba are seasonal, "separate damages were inflicted upon plaintiff's bees and honey production in the years 2018, 2019, 2020 and 2021." [SAC at ¶ 76.]  Plaintiff continues to allege (as it must) that it knew of its claimed injury and the alleged cause by September 2017.  [SAC at ¶ 75.]   However, the statute of limitations is explicit that "product liability actions shall be commenced within three (3) years after the date on which the death, injury, or damage <u>complained of</u> occurs."  Ark. Code Ann. § 16-116-203 (emphasis added). Plaintiff pleads that application of dicamba occurred seasonally, and that plaintiff's honey farm damages arose from seasonal dicamba applications in each of those discrete years. Plaintiff does not claim damages from 2017's growing year, and, unlike its First Amended Complaint, plaintiff does not allege that its injuries (loss of bees and income from honey) have been "sustained since 2017." [FAC ¶ 60.]  Instead, plaintiff alleges that "separate damages were inflicted upon Plaintiff's bees and honey production in the years 2018, 2019, 2020 and 2021." [SAC ¶ 76.]  Even to the extent damages from dicamba use in 2018 and after could be attributed to 2017 dicamba use, it may well be that those damages could be separated out from the 2018 and subsequent damages. Plaintiff claims that separate torts and damages occurred in 2018, 2019, 2020, and 2021, and thus the three-year statute of limitations has not run on those claims.

6

Defendants point out that plaintiff does not identify by year its specific, separate damages.  There is no authority supporting plaintiff must specifically enumerate the damages for each year of the complained-of dicamba effects.  Plaintiff's SAC does states that "continued use" of dicamba "will continue to cause widespread destruction and decimation of plant life in the area."  [SAC at ¶¶ 35, 42.]  But that sentence does not mean that plaintiff alleges one ongoing tort that began in 2017.  Rather, plaintiff alleges that future dicamba applications will also cause plaintiff's honey farm harm because dicamba still poses a threat to off-target vegetation.

Plaintiff has sufficiently repleaded its products liability claims.

### III.     Count 10 (Punitive Damages)

Finally, defendants move to dismiss the plaintiff's punitive damages count under the assumption that all counts for which punitive damages may be available would be dismissed.  The Court declines to dismiss plaintiff's product liability counts; thus, the Court will not dismiss plaintiff's punitive damages claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss the second amended complaint [Doc. 33] is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that plaintiff's Counts 5, 6, 8, and 9 are **DISMISSED**.

Dated this  8th  day of September, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

7