UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| COY'S HONEY FARM, INC., | ) |
| | ) MDL No.: 1:18-md-02820-SNLJ |
| Plaintiff, | ) |
| | ) Indiv. Case No. 1:21-cv-00089-SNLJ |
| v. | ) |
| | ) |
| BAYER CORPORATION; MONSANTO COMPANY; BAYER CROPSCIENCE LP; BASF CORPORATION; and BASF SE | ) ) ) ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE TESTIMONY RELATIVE TO COLLATERAL SOURCE BENEFITS RECEIVED BY PLAINTIFF**

Plaintiff filed a motion in limine asking the Court to prohibit Defendants' counsel or damages experts from mentioning the subject of or testifying about Plaintiff's receipt of payments from the USDA or other sources such as Plaintiff's crop insurers for "inadequate rainfall" or other "losses of production honey or other bee-derived products." (Doc. 57 at 2.) Plaintiff claims evidence of such payments is inadmissible under Arkansas' "collateral source rule." To the contrary, this "collateral source" evidence is admissible for at least two reasons: (1) it shows that the alleged injury Plaintiff claims was caused by dicamba was actually caused by other factors; and (2) it undercuts Plaintiff's credibility.

Specifically, Plaintiff admits it received these payments because factors like drought and rainfall reduced the amount of honey and wax Plaintiff's bees produced. In other words, the reduced production predicating these payments *was caused by factors other*

***than dicamba use***. Despite this, Plaintiff now claims that all of its alleged reductions in honey and wax production were due to purported damage from applications of XtendiMax and Engenia. Evidence of payments Plaintiff received for lost production caused by factors other than dicamba is thus also relevant for impeaching Plaintiff's testimony. The collateral source rule does not prohibit introduction of that evidence under these circumstances.

## BACKGROUND

During discovery, Plaintiff disclosed that between 2018 and 2024, it received significant payments from both the United States Department of Agriculture and Plaintiff's crop insurance companies. (*See* Exhibit A, R. Coy Deposition vol. I at 198:1-199:21, 212:21-217:16 ("Ex. A, R. Coy Depo. vol. I"); Exhibit B, R. Coy Deposition Exhibit 36.) During Plaintiff's deposition, its corporate representative admitted that Plaintiff received payments through the USDA's Emergency Relief Program for specialty crops as well as the USDA's Coronavirus Food Assistance Program ("CFAP"). Plaintiff testified that these payments were received due to reductions in production due to drought conditions and Covid-19. (*See* Ex. A, R. Coy Depo. vol. I at 212:21-217:16.) Plaintiff also received payments from its crop insurers related to drought conditions and lack of rainfall in areas where Plaintiff placed hives for honey and wax production. (*Id*. at 198:1-199:21.) Plaintiff admitted the insurance benefits and payments are premised on the understanding that drought conditions can reduce forage availability in both the current and following crop year and lack of available forage can reduce honey and wax production. (*Id*.; *see also id*. at 264:17-265:16.)

- 2 -

Plaintiff produced a document containing its damages calculations in this case. (Exhibit C, R. Coy Deposition vol. II at 163:19-165:18 ("Ex. C, R. Coy Depo. vol. II"); Exhibit D, R. Coy Deposition Exhibit 9 ("Ex. D"); Exhibit E, Exhibit 3 to Expert Report of C. Glasgow ("Ex. E").) Plaintiff seeks damages for lost production of honey and wax that Plaintiff claims was caused by off-target movement ("OTM") of XtendiMax and Engenia from 2018-2022. (Second Amended Complaint at ¶¶ 24, 45-46; Ex. C, R. Coy Depo. vol. II at 163:19-165:18; Ex. D; Ex. E.) Plaintiff's damages calculation assumes that any lost production during that time period was caused by use of XtendiMax and Engenia. (Ex. C, R. Coy Depo. vol. II at 163:19-165:18; Ex. D; Ex. E.)

Evidence of the payments received by Plaintiff from both the USDA and its crop insurers demonstrates that all or some of the reductions in honey and wax Plaintiff seeks in this case were attributable to drought, lack of rainfall, and/or other causes, not Defendants' products.[1] The collateral source rule does not bar evidence related to these payments.

---

[1] Notably, these programs are designed to provide compensation for losses caused by natural, not man-made causes such as alleged pesticide injury. (*See* Exhibit F, Excerpts from Barry Goodwin Deposition at 76:20-77:5.) Dr. Goodwin excluded these payments from his damage calculations because the evidence is clear that the yield reduction was caused by factors other than dicamba or Defendants' products (i.e., drought, lack of rainfall, etc.). (*Id*. at 76:20-82:4.)

# ARGUMENT

I. **Benefits Received by Plaintiff from the USDA and Its Crop Insurers Do Not Fall Within the Collateral Source Rule Because They Are Relevant to Causation.**

"The collateral source rule provides that benefits received by a plaintiff from a source that is wholly independent of and collateral to the defendant does not reduce the damages recoverable for the defendant." *Moore v. Pulaski Cnty. Special Sch. Dist.*, 43 S.W.3d 204, 209 (Ark. App. 2001). Put another way, evidence of the collateral source payments cannot be used for "mitigation of damages." *McMullin v. U.S.*, 515 F. Supp. 2d 904, 905 (E.D. Ark. 2007) (quotation omitted). However, the rule applies only where the benefits received from a collateral source are those that "are payable to the plaintiff ***because of the defendant's actionable conduct***." *Moore*, 43 S.W.3d at 210 (emphasis added) (quotation omitted); *Williams v. Alexander*, No. CA 06-803, 2007 WL 3088258, at *2 (Ark. App. Oct. 24, 2007) (same) (quotation omitted). Evidence of collateral source benefits are admissible if the evidence is "relevant for some purpose other than mitigation of damages." *Parrish v. Newton*, 768 S.W.2d 17, 18 (Ark. 1989) (citation omitted). This includes use of the evidence to demonstrate that the damages were caused by some factor other than the defendant's conduct. *Id.*

*Parrish* provides a helpful example of how courts apply these principles in practice. The plaintiff was injured in a car accident that caused injuries to her shoulder and neck. *Id.* at 768 S.W.2d at 18. The plaintiff missed time at work following the accident. She sought lost wages for the entire time period during which she missed worked and claimed that all of the time she missed was due to her injuries from the accident. *Id.* The defendant was

- 4 -

allowed to introduce evidence showing the plaintiff "was receiving collateral source benefits" because the defendant offered the evidence to show that some of the lost wages the plaintiff was seeking "were not the result of the accident but other physical problems, specifically gallbladder disease." *Id.* In other words, the defendant did not offer the evidence to mitigate the plaintiff's lost wages but to show that some of the lost wages were not caused by its conduct in the first place. *Id.* On appeal, the Arkansas Supreme Court held that the evidence was properly admitted because it was "relevant for the purpose of determining causation" of the plaintiff's injuries. *Id.*

The Eighth Circuit's decision in *Zutz v. Case Corp.*, 422 F.3d 764 (2005)[2] resulted in a similar holding under facts analogous to this case. The plaintiffs alleged that they had purchased defective air drills for planting crops from the defendant which did not work as advertised and caused them yield loss. *Id.* at 767-68. The plaintiffs attributed all of their alleged yield loss to problems with the air drills; however, there was evidence that the plaintiffs had also reported to their federal crop insurer that the crops were damaged by weather and insects, and the federal crop insurer paid them approximately $500,000 for that damage. *Id.* The trial court permitted the defendant to submit evidence of the crop insurance payments. *Id.* at 773. The plaintiffs argued that admission of this evidence violated the collateral source rule. The Eighth Circuit concluded, however, that no violation occurred, in part because the "evidence in the insurance records demonstrated" the

---

[2] *Zutz* involved application of Minnesota's collateral source rule, which permits a plaintiff "to recover damages from a tortfeasor, even though the plaintiff already received money from another source." 422 F.3d at 773 (quotation omitted).

- 5 -

plaintiffs were seeking recovery from the defendant "for damage to their fields caused by weather and insects," not problems with the air drills. *Id.*

*Parrish* and *Zutz* are squarely on point. Plaintiff is claiming that all of its alleged reduction of honey and wax was caused by XtendiMax and Engenia applied over the top of DT soybeans and cotton. Evidence of crop insurance and government payments Plaintiff received, however, will show that some or all of Plaintiff's alleged losses were caused by factors unrelated to those products.[3] The collateral source rule does not bar admission of that evidence for this purpose. *Parrish*, 768 S.W.2d at 18; *Zutz*, 422 F.3d at 767-68; *see also McMullin*, 515 F. Supp. 2d at 905 (collateral source rule does not apply if "the evidence of the benefits from the collateral source is relevant for a purpose other than mitigation of damages"). As the Arkansas Court of Appeals noted in *Kilgore*, "collateral source" evidence may be introduced to show that the Plaintiff attributed his injury to some other cause–just as Coy is attempting to do here. *See Wal-Mart Stores, Inc. v. Kilgore*, 148 S.W.3d 754, 760 (Ark. App. 2004) (internal citations omitted). Indeed, this exception to the collateral source rule exists to prevent a party from taking unfair advantage of an exclusionary rule. *Id.* at 761. Here, Coy is attempting to take unfair advantage and use the collateral source rule to mislead the jury on the point of what actually caused its reduced

---

[3] Indeed, in *Bader Farms*, the only case in the MDL to be tried to date, the Court denied the plaintiff's motion in limine and admitted evidence of Bader Farms' insurance claims for causes of loss other than exposure to dicamba. (*See* Doc. 390, Transcript of Pretrial Conference Held on January 23, 2020 at 56; Doc. 481, Transcript of Jury Trial Vol. 8B Held on February 5, 2020 at 1051:9-1055:11.)

production (if any), rather than to keep the jury from knowing whether there was insurance. Such use of the exclusionary rule is contrary to Arkansas law. *Id.*

## II. Evidence of Benefits Plaintiff Received from Its Crop Insurers and the USDA Are Also Admissible for Impeachment and to Challenge Plaintiff's Credibility.

Courts in Arkansas and elsewhere have recognized that evidence of collateral source benefits is properly admissible for purposes beyond challenging causation. *Montgomery Ward & Co. v. Anderson*, 976 S.W.2d 382, 385 (Ark. 1998); *Kilgore*, 148 S.W.3d at 760. Such purposes include, for example, impeaching the credibility of a plaintiff who claims damages were caused by the defendant's conduct, and not an alternative source. *See Hairgrove v. Oden*, No. CA05-1360, 2006 WL 3734739, at *2 (Ark. App. Dec. 20, 2006) ("Because the information was provided to question appellant's credibility, there was no abuse of discretion" in admitting evidence of collateral source benefits.); *Zutz*, 422 F.3d at 773.

Once again, *Zutz* is instructive. There, the Eighth Circuit held that evidence of the plaintiffs' receipt of crop insurance payments was also admissible "on the issue of the [plaintiffs'] credibility." *Id.* at 773. As the court observed, the plaintiffs "alleged they were seeking damages caused only by the Drills, but evidence in the insurance records demonstrated they were actually seeking a double recovery from Case for damages to their fields caused by weather and insects." *Id.* The court concluded that, under the circumstances, the evidence of insurance payments was "admissible to challenge a witness's truthfulness on a material issue in the case." *Id.*

Here, Plaintiff's Motion concedes the crop insurance payments Plaintiff received were for losses from natural causes (e.g., inadequate rainfall), and Plaintiff does not even attempt to argue that any of those payments were for losses related to dicamba or any actionable conduct by Defendants (nor could they since such payments cannot be made for man-made causes). (Doc. 57 at 1-2.) Plaintiff's damages calculation, however, attributes all of Plaintiff's alleged losses, including its alleged reductions in honey and wax production, to OTM of XtendiMax and Engenia. (*Supra* at 3.) And Plaintiff's Motion indicates that Plaintiff intends to testify that all of those alleged losses were in fact caused by XtendiMax and Engenia. (Doc. 57 at 1-2.)

Defendants are entitled to challenge Plaintiff's credibility with respect to its testimony on these issues, and evidence of the crop insurance payments and government payments Plaintiff received are relevant for doing so. The collateral source rule does not bar admission of that evidence for this purpose. *Montgomery,* 976 S.W.2d at 385; *Kilgore*, 148 S.W.3d at 760; *Hairgrove,* 2006 WL 3734739, at *2; *Zutz*, 422 F.3d at 773; *accord Watkins v. Lawrence Cnty., Ark.*, No. 3:17-CV-00272-KGB, 2021 WL 5282738, at *5 (E.D. Ark. Nov. 12, 2021) (denying motion in limine to exclude evidence of the plaintiff's participation in USDA prevented planting policies because the evidence could potentially negate the damages element of the plaintiff's claim); *Younts v. Baldor, Elec. Co.*, 832 N.W.2d 832, 834 (Ark. 1992) (providing false or misleading testimony about plaintiff's financial condition opens the door even for introduction of evidence which might otherwise be inadmissible under the collateral source rule); *Ebbing v. State Farm Fire & Cas. Co.*, 1

- 8 -

S.W.3d 459, 463 (Ark. 1999) (evidence of collateral source benefits may be used "to impeach a witness while testifying in a false or misleading way").

## CONCLUSION

For the reasons stated, Defendants respectfully request that the Court deny Plaintiff's Motion in Limine to Exclude Testimony Relative to Collateral Source Benefits Received by the Plaintiff.

THOMPSON COBURN LLP

By: */s/ Sara L. Chamberlain*
   Sara L. Chamberlain, # 62792MO
   Christopher M. Hohn, # 44124MO
   One U.S. Bank Plaza
   St. Louis, Missouri 63101
   (314) 552-6000
   FAX (314) 552-7000
   schamberlain@thompsoncoburn.com
   chohn@thompsoncoburn.com

*Attorneys for Defendants Bayer Corporation, Bayer U.S., LLC, and Bayer CropScience (Arkansas) Inc.*

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ Martin J. Demoret*
   Ross W. Johnson
   Carolyn A. Gunkel
   Martin J. Demoret
   801 Grand Avenue, 33rd Floor
   Des Moines, IA 50309
   (515) 248-9000
   FAX (515) 248-9010
   Ross.Johnson@faegredrinker.com
   Carolyn.Gunkel@faegredrinker.com
   Martin.Demoret@faegredrinker.com

                                        John P. Mandler
                                        Shane A. Anderson
                                        2200 Wells Fargo Center
                                        90 S. Seventh Street
                                        Minneapolis, MN 55402
                                        (612) 766-7000
                                        FAX (612) 766-1600
                                        John.Mandler@faegredrinker.com
                                        Shane.Anderson@faegredrinker.com

                                        *Attorneys for Defendant BASF Corporation*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on August 7, 2024, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

                                               */s/ Martin J. Demoret*