UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| COY'S HONEY FARM, INC., | ) |
| | ) MDL No.: 1:18-md-02820-SNLJ |
| Plaintiff, | ) |
| | ) Indiv. Case No. 1:21-cv-00089-SNLJ |
| v. | ) |
| | ) |
| BAYER CORPORATION; | ) |
| MONSANTO COMPANY; BAYER | ) |
| CROPSCIENCE LP; BASF | ) |
| CORPORATION; and BASF SE | ) |
| | ) |
| Defendants. | ) |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFF'S EXPERT DR. FORD BALDWIN

Dr. Baldwin's opinions are inadmissible for at least two independently sufficient reasons. **First**, Baldwin was admittedly unable to provide a specific, or reliable, causation opinion in this case despite purportedly seeing "landscape damage" in 2018. No other expert is providing a specific causation opinion either. Baldwin's opinions are therefore unhelpful and a poor fit. **Second**, Baldwin never visited Plaintiff's hives and did not even know what types of native vegetation Plaintiff's bees foraged on. He also did not inspect that vegetation for auxin symptomology or evaluate whether the vegetation recovered from any alleged exposure. Baldwin's opinions are therefore also inadmissible under the Court's prior order in this MDL that Baldwin's "opinions related to dicamba injuries to fields he has not visited must be excluded." (MDL Doc. 519 at 20.)

In response, Plaintiff protests that it would be "highly problematic" to require Baldwin to scientifically link "landscape damage" he purportedly observed (to crops and trees) to reductions in pollen and nectar produced by native vegetation that Plaintiff's bees foraged on (which Baldwin admittedly never observed). (Doc. 75 at 1-2.) Plaintiff thus acknowledges that Baldwin's opinions, including his general "landscape damage" theory, do not meet the standards used and applied by federal courts in testing the reliability and admissibility of expert testimony. Baldwin offers no opinion on specific causation and his general opinions are unreliable, unscientific and cannot be applied to the facts of the case. Notably, Baldwin did not even bother to *visit a single one of Plaintiff's hives* or evaluate whether auxins impacted pollen or nectar supplies produced by native vegetation near those hives. He also did not consider *any* information about Plaintiff's operation in reaching his opinions and *does not even mention Plaintiff* in his Report. Baldwin did not do any of the basic work necessary to provide reliable opinions on specific causation and he does not pretend otherwise.

Baldwin's opinions about "dicamba", including his speculation about "uniform" symptomology in areas he never observed or investigated (like the areas around Plaintiff's hives) are unreliable, unhelpful and untethered to any case-specific facts or data. The Court should thus exclude Baldwin from offering opinions in this case.

## BACKGROUND

Plaintiff filed its Response brief on August 14, 2024—a week after the Court's August 7, 2024 deadline to file the Response. (Doc. 69.) Plaintiff did not provide any explanation for the late filing or seek leave to extend the deadline. The Court would thus

be within its discretion to strike Plaintiff's Response and treat Defendants' Motion to exclude Baldwin as unopposed. *See*, *e.g., Martin v. Galla*, No. 22-05007-CV-SW-DPR, 2023 WL 5109552, at * 1 (W.D. Mo. Aug. 9, 2023) (striking opposition briefs filed after the Daubert motion deadline where the filing party did not seek leave of court for its late filings or demonstrate good cause to modify the court's scheduling order). Regardless, Plaintiff's Response fails to rebut Defendants' arguments that Baldwin should be excluded.

### A.     Plaintiff Waived Opposition to Key Arguments in Defendants' Motion.

As the proponent of Baldwin's testimony, Plaintiff has the burden to prove its admissibility by a preponderance of the evidence. Fed. R. Evid. 702. Plaintiff fell far short of meeting this burden and in fact failed to dispute many of Defendants' arguments concerning the limitations and admissibility of Baldwin's testimony. *Georges v. Accutira Mortg., Inc.* No. 4:08-cv-201 (JCH), 2008 WL 2079125, at *5 (E.D. Mo. May 15, 2008) ("plaintiff's failure to respond to defendant's arguments was a concession that defendant's arguments were correct"); *Mukherjee v. Children's Mercy Hospital*, No. 16-01291-CV-W-ODS, 2018 WL 1177478, at *4 n.2 (W.D. Mo. March 6, 2018) (party "tacitly conceded" argument by failing to respond to it); *SL EC, LLC v. Ashley Energy, LLC*, 561 F. Supp. 3d 802, 821 (E.D. Mo. 2021) (same). These include, but are not limited to, the following:

- **Baldwin is not offering a specific causation opinion.** Baldwin does not have an opinion on what factors actually impacted the health or productivity of Plaintiff's bees and does not know to a reasonable degree of scientific certainty whether dicamba impacted Plaintiff's bees or their production. (Doc. 62 at 5.)

- **Baldwin is not offering opinions specific to Plaintiff.** Baldwin's Report does not mention Plaintiff a single time and he is not offering any opinions specific to Plaintiff's operation (*Id.* at 7; see also Baldwin Tr. 65:4-13 (admitting the impact to

Plaintiff's hives, if any, was outside the scope of his opinions because "he didn't investigate [Plaintiff's] honey farm").)

- **Baldwin did not consider information about Plaintiff's operation in reaching his opinions.** In reaching his opinions, Baldwin admittedly did not rely on any information about Plaintiff or its operations. (Doc. 62 at 7.) For example, he considered no information about Plaintiff's production history, its management practices, or the stressors its bees faced year-to-year. (*Id*.) He also did not consider any documents Plaintiff produced related to its operation in forming his opinions. (*Id*.)

- **Baldwin never visited Plaintiff's hives or inspected native vegetation near them.** Baldwin does not know the specific locations of Plaintiff's hives. (*Id.* at 7.) He also never visited any of Plaintiff's hives and declined an invitation from Richard Coy in 2018 to do so. (*Id.*) Baldwin could not say whether he had ever inspected vegetation near Plaintiff's hives, could not recall ever specifically evaluating alleged dicamba damage to native vegetation, and admittedly never evaluated whether native vegetation produced less nectar or pollen due to dicamba damage. (*Id.* at 9-10.)

- **Baldwin acknowledges there are obvious alternative causes of Plaintiff's alleged injuries that he did not consider or rule out and he lacked the expertise to do so.** Baldwin is aware that many factors can impact the health and productivity of bees, including things like disease, parasites, temperature, drought, insecticides, and numerous other factors. (*Id.* at 5.) He did not consider or rule out these obvious alternative causes in reaching his opinions. (*Id.*) Baldwin admittedly lacks the expertise to evaluate how these factors actually impacted the health or productivity of bees. (*Id.*)

- **Baldwin has no evidence that XtendiMax or Engenia damaged native vegetation near Plaintiff's hives.** Baldwin cites numerous statements by weed scientists and state regulators noting widespread incidents of damage to native vegetation in and after 2018 from non-dicamba auxins. (*Id.* at 11, 13.) Baldwin acknowledges it can be difficult to differentiate dicamba and non-dicamba auxin symptoms. (*Id.*) Baldwin also admittedly did not evaluate and does not know whether dicamba symptomology he purportedly saw was caused by older dicamba formulations and admits he could not tell the difference just by looking at symptomology. (*Id.* at 11, 21.)

- **Baldwin believes the "landscape damage" he purportedly saw was likely caused by illegal applications.** Baldwin testified that it is an egregious violation of Arkansas law to make OTT applications of older dicamba formulations or to make OTT applications after the ASPB's cutoff date. (*Id.* at 11.) Baldwin believes that

- 4 -

dicamba symptomology he purportedly observed in 2018 and 2019 likely resulted from illegal applications made after the ASPB's cutoff date and/or which involved older dicamba formulations. (*Id*.)

- **Baldwin admits soybeans can recover from dicamba symptomology with no yield loss and has no basis to dispute that native vegetation can similarly recover.** Baldwin acknowledges that soybeans can recover from significant dicamba symptomology with no yield loss. (*Id.* at 8.) Baldwin has no basis to dispute that native vegetation can similarly recover. (*Id.*) He acknowledges that native vegetation is much less sensitive to dicamba than non-DT soybeans and that different species will vary in their sensitivity to dicamba. (*Id.*) Baldwin does not know whether or to what extent the species of native vegetation that Plaintiff's bees foraged on are sensitive to dicamba. (*Id.*)

## ARGUMENT

A. **Baldwin Admits He Is Not Providing an Opinion on Specific Causation, and the Remainder of his Opinions Are Unhelpful and Unreliable.**

Defendants' opening brief established that Baldwin admittedly does not know and cannot opine to a reasonable degree of scientific certainty whether XtendiMax or Engenia—the only two products at issue in this case—actually impacted Plaintiff's bees or their honey production. (Doc. 62 at 16.) Baldwin readily admits as much, noting that "you can't tell the difference" in formulations that allegedly caused symptomology (Baldwin Tr. at 189:22-190:7). Plaintiff does not dispute this but instead argues that Baldwin will testify that he saw "landscape damage" in east Arkansas that he believes was caused, in part, by "volatility" from "Dicamba Herbicides." (Doc. 75 at 7.) Such arguments are insufficient to establish admissibility for multiple reasons.

*First*, Baldwin does not and cannot provide an opinion on whether "Dicamba Herbicides" (a term Plaintiff does not define in its Response) reduced pollen and nectar production in the native vegetation on which Plaintiff's bees foraged (Supra at 3-4) and

- 5 -

cannot provide a specific causation opinion even despite allegedly seeing "landscape damage" in 2018. (Doc. 62 at 16.) This is unsurprising given that Baldwin did not visit Plaintiff's hives, learn what vegetation the bees foraged on, examine the vegetation for dicamba damage, or evaluate whether dicamba reduced pollen and nectar production. (Supra at 4.) Further, he admits that native vegetation varies in its sensitivity to dicamba and does not dispute that the native vegetation could have recovered from dicamba exposure (if any). (*Id.* at 5.)

Even under his own stated process for conducting field inspections, Baldwin would have had to actually visit, inspect, and investigate the areas and vegetation surrounding Plaintiff's hives, including looking for symptomology and patterns, reviewing herbicide application records, considering other potential causes, taking photos, and conducting witness interviews to make that determination, which he admits he did not do. (*See* Doc. 62 at 9.) Baldwin's assumption that there was damage to vegetation on which Plaintiff's bees foraged, is not grounded in sufficient facts or data and was not generated through the use of reliable, scientific principles and methods. (*See* Doc. 62 at 1-14.)

The reality is that Baldwin admittedly does not know and cannot say, to a reasonable degree of scientific certainty, whether dicamba, much less XtendiMax or Engenia, actually impacted Plaintiff's bees. Baldwin did not do the work necessary to translate or link his general observations of alleged dicamba symptomology in *other* crops, plants, or locations to Plaintiff's bees or the vegetation on which they foraged. As a result, he cannot supply an opinion on specific causation. Baldwin's opinions are a poor fit and should therefore be

excluded. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055 (8th Cir. 2000); *Grimes v. Hoffmann-LaRoche, Inc.*, 907 F. Supp. 33, 34-35 (D.N.H. 1995).

**Second**, Baldwin knows that bees exist in complex ecosystems and face many stressors that can impact their health and productivity (Supra at 4.); however, he did not evaluate or rule out these obvious alternative causes, which further prevented him from providing a specific causation opinion. *Redd v. DePuy Orthopaedics, Inc.*, 700 Fed. Appx. 551, 554-55 (8th Cir. 2017) (affirming order granting summary judgment and excluding plaintiff's expert where plaintiff did not present expert testimony on complex causation and its expert failed to address or rule out obvious alternative causes).

**Third**, Baldwin acknowledged that the "landscape" damage he purportedly saw in and after 2018 likely resulted from illegal applications. (Supra at 4.) Plaintiff does not dispute that these illegal applications constitute an intervening cause under Arkansas law. (Doc. 60 at 35.)

**Fourth**, Baldwin admits he does not know what formulations caused the symptomology he purportedly saw and agrees that OTT applications of older dicamba formulations may have caused the alleged "landscape damage." (Supra at 4.)  Plaintiff acknowledges that XtendiMax and Engenia are the only two products at issue. (Doc. 60 at 12.) Yet Baldwin admittedly cannot say whether or to what extent OTT applications of those products, much less legal ones, caused "landscape damage" in and after 2018. (Supra at 4.)  Baldwin's opinions are not based in science but on a perceived temporal relationship between "landscape damage" and the release of Engenia in 2017 and XtendiMax in 2018 in Arkansas. These unsupported, unscientific observations are insufficient to satisfy the

- 7 -

requirements of Rule 702. *Schmaltz v. Norfolk & W. Ry. Co.*, 878 F.Supp. 1119, 1122 (N.D. Ill. 1995) ("It is well settled that a causation opinion based solely on a temporal relationship is not derived from the scientific method and is therefore insufficient to satisfy the requirements of Fed. R. Evid. 702.") (citing cases).

In sum, Baldwin does not know whether dicamba reduced nectar and pollen produced by the native vegetation Plaintiff's bees foraged on, agrees other obvious alternative causes may have impacted the health and productivity of Plaintiff's bees, acknowledges any purported "landscape damage" he saw was likely caused by illegal applications, and does not know whether OTT applications of XtendiMax or Engenia caused any of the alleged damage. Baldwin's general opinions about alleged "landscape damage" do not come close to addressing the ultimate question in this case—whether volatility from OTT applications of XtendiMax or Engenia caused Plaintiff's alleged loss of honey production. Baldwin's opinions should be excluded because they are unhelpful, unreliable, and a poor fit. Fed. R. Evid. 702; *see Polski v. Quigley Corp.*, 538 F.3d 838, 839 (8th Cir. 2008) (the "basic rule of relevancy" is that expert testimony must be helpful to the jury in deciding the ultimate issue of fact); *Nat'l Bank of Com. (of El Dorado, Ark.) v. Dow Chem. Co.*, 965 F. Supp. 1490, 1493 (E.D. Ark. 1996) (same).

**B.      The Court's MDL Ruling Precludes Baldwin's Testimony.**

Defendants' opening brief established that Baldwin's testimony is also inadmissible under the Court's ruling in the MDL that Baldwin's "opinions related to dicamba injuries to fields he has not visited must be excluded." (MDL Doc. 519 at 19-20.) Plaintiff argues the Court should eschew its MDL Order excluding Baldwin's testimony because the Court

allowed Baldwin's testimony in *Bader*. There is no comparison. In *Bader*, Baldwin actually *inspected Bader's orchards* and offered specific causation opinions based on his observations of the orchards. (Bader Farms Doc. 275 at 7-9.) Baldwin also considered additional case-specific information, such as photos, documents produced in the litigation, and witness testimony. (*Id.*) Here, Baldwin did not visit Plaintiff's hives, inspect the vegetation the bees foraged on, or consider any case specific information. It is thus unsurprising that Baldwin cannot provide a specific causation opinion here. (Supra at 3-4.)

In contrast to *Bader*, the MDL Order excluded Baldwin's testimony because he attempted to opine about the nature and alleged cause of damage he never observed or investigated. He did not visit most of the soybean fields he opined about, confirm there was symptomology or analyze the cause, account for differences in geographic areas or growing conditions, or evaluate whether the soybeans recovered. (MDL Doc. 19-20.) The Court expressly noted Baldwin's analysis in the MDL was "[u]nlike his work in [] Bader Farms" because he did not do a case-specific investigation and concluded "the leap Baldwin makes—extrapolating to non-DT soybeans in eight states from his observations in Missouri and Arkansas—goes too far." (*Id.* at 19.) To punctuate its point, the Court drew a line in the sand: "although Baldwin clearly has the qualifications and experience to opine on the volatility and off-target movement of dicamba, **his opinions related to dicamba injuries to fields he has not visited must be excluded**."[1] (*Id.* at 20.) (emphasis added).

---

[1] It makes no difference that, in this case, Baldwin generalizes as to the landscape of "some eight or ten" counties in Eastern Arkansas, and not an "eight-state" region as in the MDL, or that bees can forage for nectar and pollen in a several mile radius. Nor does it aid Plaintiff's position that Baldwin claims to have inspected some 50 fields in Arkansas in

The exact same deficiencies underpin Baldwin's work in this case. He did not visit Plaintiff's hives or inspect vegetation near them. (Supra at 4.) Baldwin also did not know what native vegetation Plaintiff's bees foraged on or whether that vegetation is sensitive to dicamba. (*Id*. at 4.) Indeed, Plaintiff does not deny that Baldwin is unable to state whether there was even auxin symptomology on native vegetation surrounding Plaintiff's hives. (Baldwin Tr. at 60:17-61:7.) Baldwin also did not evaluate whether native vegetation recovered from any alleged auxin symptomology. (Supra at 5.) The gaps in Baldwin's methodology and analysis bring his opinions squarely with the scope of the Court's prior MDL Order excluding Baldwin's testimony. (MDL Doc. 519 at 19-20.) Baldwin's opinions should likewise be excluded here.

To be clear, there are even stronger grounds for excluding Baldwin in this case because he has admitted he cannot not opine "with a reasonable degree of scientific certainty" that dicamba "affect[ed] Coy's Honey Farms." (Baldwin Tr. at 61:8-65:13.) And unlike the MDL, where Baldwin at least inspected soybeans in some areas, here it is undisputed he did not inspect native vegetation for dicamba symptomology or evaluate whether any alleged symptomology caused reductions in nectar and pollen sources. Baldwin cannot provide a specific causation opinion even despite purportedly seeing "landscape damage" in crops and trees in 2018. Regardless of Baldwin's landscape damage

---

2017. (Doc. 75 at 8-10.) Not only was that an entire year before Plaintiff's alleged damage began (and before XtendiMax was approved for sale in Arkansas), but there is also no evidence that those fields were anywhere near Coy's hives or that Plaintiff's bees in fact foraged from those areas. None of Plaintiff's excuses for Baldwin's failure to investigate Plaintiff's claims address the fundamental problem with Dr. Baldwin's opinions.

claims, his inability to specifically connect those alleged observations to Plaintiff's bees demonstrates that his opinions are unreliable and unhelpful.

Plaintiff argues this is not so for two reasons. **First**, Plaintiff contends that Baldwin's opinions about "landscape damage" support an inference that volatility from Dicamba herbicides caused a reduction in its honey production. (Doc. 75 at 1-2.) Not so. Baldwin did not and would not make the speculative leap that alleged landscape damage he purportedly observed impacted Plaintiff's bees. (Supra at 3-4.)

**Second**, Plaintiff argues that it would be "highly problematic" to require a reliable scientific linkage between Baldwin's opinions and Plaintiff's case theory. (Doc 75 at 2.) In other words, Plaintiff argues that proving causation in this case is too hard and the Court should grant it an exception to satisfying the requirements of Rule 702. The Court should reject Plaintiff's invitation to err. Plaintiff is required to prove that proffered expert testimony is based on sufficient facts and data and the product of reliable principles and methods reliably applied to the facts of the case. *See* Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579-592-94 (1993). Plaintiff has wholly failed to do so here.

Plaintiff's arguments about the difficulties of reliably proving causation are a red herring. Most notably, Plaintiff claims it is unrealistic to expect Baldwin to visit "each" of Plaintiff's hives. (Doc. 75 at 6.) However, Baldwin never visited **any** of Plaintiff's hives. This was not for lack of opportunity. Richard Coy invited him to inspect the hives in 2018, and Baldwin declined. (Doc. 62 at 7.) Despite Baldwin's claim that he regularly drove around northeast Arkansas, he cannot say that he performed any inspections in the vicinity of any Plaintiff's hives. (*Id*.) Plaintiff also fails to explain why Baldwin (or Plaintiff for

- 11 -

that matter) was unable to document any evidence of alleged symptomology to native vegetation, why Baldwin did not take any samples or study whether or to what extent pollen and nectar sources in the eight-to-ten county region were reduced in 2018 or any other year, or why Baldwin considered no information about Plaintiff's operation in preparing his Report. (Supra at 3-4.)

Baldwin made no effort whatsoever to connect his general opinions about landscape damage[2] to any impacts on Plaintiff's bees. Rule 702 requires that experts collect sufficient facts and data and to reliably analyze how that information applies to the facts of the case. Fed. R. Evid. 702; *Daubert, Inc.*, 509 U.S. at 592-94. Baldwin plainly did not do this work and therefore admittedly could not offer causation opinions.[3] Plaintiff cannot blame Defendants for its failure to satisfy the requirements of Rule 702.

---

[2] To be clear, Defendants also dispute that Baldwin offered reliable, admissible opinions on "landscape damage" generally. Baldwin did not follow his typically methodology for inspections, did not keep detailed photos or notes, typically did not get out of his vehicle to look at symptomology, did not evaluate whether the plants recovered, and did not try to determine what specific product caused the damage. (Supra at 3-5.) Indeed, during his deposition Baldwin could barely remember any specific fields he looked at or who owned them. (*Id.*) No other expert can replicate Baldwin's "drive by" inspections or meaningfully evaluate what Baldwin saw or whether his conclusions were reasonable. These are precisely the kind of reliability problems Rule 702 is designed to address. *Daubert,* 509 U.S. at 592-94; *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055 (8th Cir. 2000); *Grimes v. Hoffmann-LaRoche, Inc.*, 907 F. Supp. 33, 34-35 (D.N.H. 1995). Indeed, the thrust of Baldwin's opinions is essentially "trust me, the dicamba damage was everywhere." Baldwin's only support is his own say-so. It is the epitome of *ipse dixit.*

[3] Plaintiff's Response suggests Baldwin is "prepared to testify" that "Dicamba Herbicides spread across much of the landscape to flowering plants that are the natural sources of bees' pollen and nectar, killing or damaging those plants." (Doc. 75 at 7.) Tellingly, Plaintiff cites no evidence showing Baldwin disclosed this opinion in his report or during his deposition (because he did not). Pursuant to Rule 26(a)(2)(B), Baldwin's Report was required to disclose a "complete statement of all opinions [Baldwin] will express and the basis and reasons for them." Moreover, Plaintiff fails to explain how Baldwin could offer

### C. Plaintiff's Claims Fail as a Matter of Law Regardless of Whether the Court Excludes Baldwin's General Opinions.

Defendants reiterate that Plaintiff's claims fail as a matter of law even if the Court were to allow some of Baldwin's general opinions to survive (and it should not). It is undisputed that Plaintiff must prove causation in this case through expert testimony. (Doc. 60, Memo. in Support of Defendants' Motion for Summary Judgment at 31-32.) It is also undisputed that Plaintiff has not designated an expert to provide a specific causation opinion. (*Id.*; *see also* Doc. 62 at 5-6.) Because Plaintiff has failed to meet its burden on causation, its claims fail as a matter of law regardless of the opinions Baldwin seeks to provide. *E.g., Barrett v. Rhodia, Inc.*, 606 F.3d 975, 985 (8th Cir. 2010) (summary judgment properly granted where plaintiff failed to prove complex causation issue through expert testimony); *Girlinghouse v. Capella Healthcare*, No. 6:15-cv-6008, 2016 WL 5539610, at *7 (W.D. Ark. Sept. 28, 2016) (same). In any event, exclusion of Baldwin's opinions is appropriate for the reasons explained above and in Defendants' opening brief. (Doc. 62.)

### CONCLUSION

Dr. Baldwin's opinions are inadmissible and should be excluded because they will not help the trier of fact to determine a fact in issue, do not "fit" the Plaintiff's claims, and are not the product of reliable methodology reliably applied to the facts of the case.

---

reliable opinions on this topic given that he did not know what types of native vegetation Plaintiff's bees foraged on and is admittedly not offering a specific causation opinion. Plaintiff's attempted revision of Baldwin's opinions cannot save them. The Court should ignore Plaintiff's characterizations of the opinions it thinks Baldwin is "prepared" to give and exclude him based on the opinions he actually provided.

        THOMPSON COBURN LLP

        By: */s/ Sara L. Chamberlain*
           Sara L. Chamberlain, # 62792MO
           Christopher M. Hohn, # 44124MO
           Amanda J. Hettinger, #55038MO
           Matthew S. Bober, #59825MO
           One U.S. Bank Plaza
           St. Louis, Missouri 63101
           (314) 552-6000
           FAX (314) 552-7000
           schamberlain@thompsoncoburn.com
           chohn@thompsoncoburn.com
           ahettinger@thompsoncoburn.com
           mbober@thompsoncoburn.com

        *Attorneys for Defendants Bayer Corporation, Bayer U.S., LLC, and Bayer CropScience (Arkansas) Inc.*

        FAEGRE DRINKER BIDDLE & REATH LLP

        By: */s/ Martin J. Demoret* (with permission)
           Ross W. Johnson
           Carolyn A. Gunkel
           Martin J. Demoret
           801 Grand Avenue, 33rd Floor
           Des Moines, IA 50309
           (515) 248-9000
           FAX (515) 248-9010
           Ross.Johnson@faegredrinker.com
           Carolyn.Gunkel@faegredrinker.com
           Martin.Demoret@faegredrinker.com

           John P. Mandler
           Shane A. Anderson
           2200 Wells Fargo Center
           90 S. Seventh Street
           Minneapolis, MN 55402
           (612) 766-7000
           FAX (612) 766-1600
           John.Mandler@faegredrinker.com

Shane.Anderson@faegredrinker.com

*Attorneys for Defendant BASF Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2024, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

*/s/ Sara L. Chamberlain*